DECISION AND JOURNAL ENTRY
Appellant/cross-appellee David Burner ("Husband") and appellee/cross-appellant Rosemary Burner ("Wife") both appeal from a divorce decree entered in the Summit County Court of Common Pleas, Domestic Relations Division. We affirm in part and reverse in part.
 I.
The parties were married on August 19, 1961. Three children were born as issue of the marriage, all of whom were emancipated at the time of trial.
Husband began working in the business field in 1962. In 1983, Husband was hired as an executive by the B.F. Goodrich Company in Akron, Ohio. From that time, Husband and Wife worked toward the goal of Husband becoming the president of B.F. Goodrich. By 1997, Husband was the president, chief executive officer, and chairman of the board of B.F. Goodrich.
Husband separated from Wife in May 1997. On October 14, 1997, Husband filed a complaint for divorce. Wife answered and counterclaimed for divorce on November 13, 1997.
A trial was held on March 3, 1999, and May 17-19, 1999. The trial court issued a divorce decree on November 24, 1999.[1] Husband timely appealed to this court, and Wife timely cross-appealed.
 II.
Husband presents nine assignments of error for our review, and Wife asserts one cross-assignment of error. We will address each assignment of error in due course, rearranging their order and consolidating related assignments of error to facilitate discussion.
 A. Property Award 1. Separate/Marital Property Second Assignment of Error The Trial Court Erred As A Matter Of Law In Failing To Award [Husband] Appreciation On His Separate Property Interest In the Chatham Road, Akron Real Estate.
 Cross-Assignment of Error The Trial Court Erred in Determining That Any Portion of [Husband's] Interest in the Chatham Road, Akron House Was Separate Property.
 We first address Husband's second assignment of error and Wife's cross-assignment of error. Both relate to $60,643.00 that the trial court found to be Husband's separate property. Annually, Husband was eligible to receive a discretionary bonus under B.F. Goodrich's management incentive program ("MIP"). The parties agreed to divide Husband's 1997 MIP bonus between them. Husband used $60,643 of the bonus in the purchase of a house on Chatham Road in Akron, Ohio. Husband made improvements on the house, which was later sold, and the funds were then used to purchase another house in North Carolina after B.F. Goodrich relocated its corporate headquarters there. Wife argues that the funds should have been classified as marital property; Husband argues that he should have been awarded appreciation on the separate property interest, based on the improvements made on the Chatham Road house before it was sold.
In a divorce, marital property and separate property are mutually exclusive. R.C. 3105.171(A)(3)(b). Marital property is to be divided between the spouses, R.C. 3105.171(C)(1), while separate property is distributed solely to the spouse to whom the property belongs, R.C.3105.171(D). Separate property is defined as all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 (i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
 (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of marriage;
 (iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;
 (iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17
of the Revised Code;
 (v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;
 (vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;
 (vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.
R.C. 3105.171(A)(6)(a).
A trial court's characterization of property as marital or separate is reviewed under an abuse of discretion standard. Peck v. Peck (1994),96 Ohio App.3d 731, 734. An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
The trial court's characterization of the 1997 MIP bonus funds as Husband's separate property was based on its finding that "[t]he parties had previously agreed to the manner in which this bonus would be divided between them." However, there is nothing in the record to establish that Husband and Wife agreed that each party's share of the 1997 MIP bonus funds would be his or her separate property. The $60,643 does not fall within any of the definitions of separate property found in R.C.3105.171(A)(6)(a). As such, the $60,643 used in the purchase of the Chatham Road house was marital property, and the trial court's characterization of those funds as Husband's separate property was unreasonable. Further, because the $60,643 from the 1997 MIP bonus was marital property, Husband was not entitled to passive appreciation on those funds.
Wife's cross-assignment of error is sustained. Husband's second assignment of error is overruled.
 2. Division of Marital Property Third Assignment of Error The Trial Court Abused Its Discretion In Its Division of 6148 [B.F. Goodrich] Shares.
 Husband contends in his third assignment of error that the trial court abused its discretion by awarding him 6,148 shares of B.F. Goodrich stock in the division of marital property. He asserts that the potentially uncertain value of such stock decreases the value of his portion of the marital property. His contention is without merit.
In a divorce proceeding, marital property is to be divided equally, unless that division would be inequitable. R.C. 3105.171(C)(1). Under R.C. 3105.171(F), the trial court is to consider nine factors in distributing marital property, eight of which are relevant here:
(1) The duration of the marriage;
(2) The assets and liabilities of the spouses;
* * *
 (4) The liquidity of the property to be distributed;
 (5) The economic desirability of retaining intact an asset or an interest in an asset;
 (6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 (9) Any other factor that the court expressly finds to be relevant and equitable.
The distribution of marital property is to be supported by written findings of fact. R.C. 3105.171(G).
In reviewing the trial court's findings, we presume that the trial court considered the relevant statutory factors. See Carpenter v.Carpenter (1988), 61 Ohio App.3d 584, 588. We will reverse a property division only for an abuse of discretion by the trial court. Verplatsev. Verplatse (1984), 17 Ohio App.3d 99, 102. Furthermore, the property division is to be reviewed in the context of the entire award. James v.James (1995), 101 Ohio App.3d 668, 680.
In the case at bar, the trial court made an equal division of marital property. The parties stipulated to an equal division of 339,800 shares of B.F. Goodrich stock options, an equal division of 35,891 shares of B.F. Goodrich common stock (fair market value of $1,534,340 at the time of trial), and an equal division of the value of stock options from Milacron, Inc., and Brush Wellman, Inc., upon Husband exercising those options. The parties also stipulated that, as a part of the division of marital property, Husband would receive 5,000 shares of B.F. Goodrich restricted stock (fair market value of $213,750 at time of trial) and 1,007.952 shares of Milacron, Inc., common stock (fair market value of $23,182.89 at time of trial). The trial court then awarded Husband,inter alia, 6,148 shares of B.F. Goodrich stock (fair market value of $262,827 at time of trial) from the company's Long-Term Incentive Plan (" the LTIP stock").
Viewing the property division as a whole, we conclude that the trial court did not abuse its discretion by awarding the LTIP stock to Husband. Husband had already stipulated that he would receive $236,932.89 in corporate stock, which also has the potential to decrease in value. While the LTIP stock has the potential to decrease in value, it also has the potential to increase in value. We cannot say that the trial court acted unreasonably. The third assignment of error is overruled.
 B. Spousal Support 1. Spousal Support Award Fourth Assignment of Error The Trial Court Erred As A Matter Of Law And Abused Its Discretion In Ordering [Husband] To Pay Spousal Support Based On 50% Of His Income.
 Fifth Assignment of Error The Trial Court's Spousal Support Award Of $57,083 Per Month Is Not Appropriate And Reasonable.
 In his fourth and fifth assignments of error, Husband argues that the trial court's spousal support award was an abuse of discretion. He contends that the trial court improperly awarded fifty percent of his base pay and fifty percent of an annual discretionary bonus. We agree.
A trial court may award reasonable spousal support in a divorce action after a property division is effectuated. R.C. 3105.18(B).
 In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
* * *
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
R.C. 3105.18(C)(1). We review a spousal support award under an abuse of discretion standard. Schindler v. Schindler (Jan. 28, 1998), Summit App. No. 18243, unreported, at 17.
At the time of trial in May 1999, Husband's base annual salary was $800,000. He was also eligible each year for the MIP bonus, which tied the amount of the bonus to whether B.F. Goodrich met certain goals. Over the three previous years, he received an average MIP bonus of $573,848.[2] Wife had not been employed since 1962, the second year of the marriage, and there was little prospect of Wife obtaining employment in the future.
Husband left the marital residence in May 1997. At that time, Husband began giving Wife one-half of his net income ($10,000 per month) and one-half of all dividends received from B.F. Goodrich stock. When his income increased in January 1998, Husband did not increase the amount of money he paid Wife from his net income. Wife also increased her social activities, by entertaining more and by joining additional country and dining clubs. Wife's estimated monthly budget exceeded $30,000.
In the division of marital property, the trial court awarded Wife,inter alia, two houses (one in Hudson, Ohio, and another in Key Largo, Florida),[3] all of the personal property in the Hudson house, membership in a Florida country club, one-half of Husband's various retirement benefits as accrued up to March 3, 1999 (the ending date of the marriage), and a substantial amount of cash. The trial court then awarded Wife spousal support. The trial court ordered Husband to pay $33,333.33 per month, plus processing fee, and an additional lump sum payment of $285,000, payable in February of each year when Husband receives his MIP bonus for the previous year. The trial court also stated that the lump sum payment is due each year regardless of whether an MIP bonus is received that year.
We conclude that the trial court's spousal support award was an abuse of discretion. R.C. 3105.18(C)(1) requires that an award of spousal support be reasonable and appropriate. In Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 70, the Ohio Supreme Court determined that an award of spousal support (then called alimony) based on a percentage of the payor's income was unreasonable. See, also, Robiner v. Robiner (Dec. 7, 1995), Cuyahoga App. No. 67195, unreported, 1995 Ohio App. LEXIS 5425, at *19-*20; Edwards v. Edwards (Aug. 26, 1991), Jackson App. No. 651, unreported, 1995 Ohio App. LEXIS 4080, at *8. In the case at bar, the monthly award of spousal support totals $400,000 — exactly one-half of Husband's base pay. In addition, the lump sum award is almost one-half (49.66%) of the three year average of Husband's MIP bonuses from 1996-1998. Despite Wife's assertion that the spousal support award is not based on a mathematical formula, it is clear that the trial court awarded spousal support based on fifty percent of Husband's base pay and past MIP bonuses, contrary to Kunkle. Accordingly, the trial court's spousal support award was not reasonable and appropriate.
The trial court's spousal support award was an abuse of discretion. Husband's fourth and fifth assignments of error are sustained.
 2. Other Spousal Support Issues Sixth Assignment of Error The Trial Court Abused Its Discretion In Failing To Retain Jurisdiction To Modify Spousal Support Based Upon [Husband's] Mandatory Retirement At Age 65 Or His Failure To Receive A Discretionary Bonus.
 Eighth Assignment of Error The Court's Failure To Retain Jurisdiction For [Husband] To Modify Spousal Support Downward While Not Similarly Restricting [Wife] From Seeking An Upward Modification Violates [Husband's] Right To Equal Protection.
 For his sixth and eighth assignments of error, Husband contends that the trial court failed to retain jurisdiction to modify the spousal support award. We note that the trial court specifically included language in its order that the spousal support award "is subject to the continuing jurisdiction of this Court."[4] However, based on our resolution of the fourth and fifth assignments of error, the sixth and eighth assignments of error are moot. See Berthelot v. Berthelot
(Apr. 15, 1998), Summit App. No. 18331, unreported, at 10-11.
 First Assignment of Error
The Trial Court Erred In Double Counting [Husband's] 1999 MIP Bonus.
 Seventh Assignment of Error The Trial Court's Spousal Support Order Renders The Property Division Illusory.
 Ninth Assignment of Error The Trial Court Erred As A Matter Of Law In Ordering Spousal Support To Be Withheld From [Husband's] Wages In Excess Of The Withholding Limits Established by Ohio And Federal Law.
 The first, seventh, and ninth assignments of error all relate to the spousal support award. Based on our resolution of the fourth and fifth assignments of error, these assignments of error are likewise moot.
 III.
Husband's second and third assignments of error are overruled, his fourth and fifth assignments of error are sustained, and the remainder of Husband's assignments of error are moot. Wife's sole cross-assignment of error is sustained. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
 ___________________________ LYNN C. SLABY
BATCHELDER, P. J. WHITMORE, J. CONCUR
[1] The relevant provisions of the divorce decree will be discussed with the corresponding assignments of error.
[2] The 1996 MIP bonus was $487,046, the 1997 MIP bonus was $650,389, and the 1998 MIP bonus was $584,110.
[3] Shortly after the divorce decree was issued, Wife sold the Hudson house.
[4] The crux of Husband's argument is that he will not be entitled to a reduction in spousal support after his mandatory retirement from B.F. Goodrich at age 65. (Husband was 60 years old at the time of trial.) We note that Wife has conceded in her brief that mandatory retirement "constitutes an involuntary decrease in his wages and bonuses and would be `a change of circumstances' contemplated by the statute [R.C.3107.18(F)] authorizing a spousal support modification."